UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JONATHAN N. SAVAGE, ESQ., solely in his capacity as Permanent Non-Liquidating Special Master of Phoenix Houses of New England, Inc., and W. MARK RUSSO, ESQ., solely in his Capacity as Program Coordinator of the Rhode Island Superior Court COVID-19 Business Recovery Plan, *Plaintiffs*, <br><br> v. <br><br> UNITED STATES SMALL BUSINESS ADMINISTRATION, and ISABELLA CASILLAS GUZMAN, in her capacity as Administrator of the Small Business Administration, *Defendants.* | **REQUEST FOR EMERGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF** <br><br><br><br><br><br> C.A. No. |

## VERIFIED COMPLAINT

Plaintiffs, Jonathan N. Savage, Esq. (the "Special Master"), solely in his capacity as

Permanent Non-Liquidating Special Master of Phoenix Houses of New England, Inc. ("Phoenix

House"), and W. Mark Russo, Esq., solely in his capacity as Program Coordinator of the Rhode

Island Superior Court COVID-19 Business Recovery Plan (the "Program Coordinator"), bring this

Complaint for Declaratory Judgment and Temporary, Preliminary, and Permanent Injunctive

Relief, for an Order: (1) declaring that Phoenix House is not excluded from the definition of an

"eligible recipient" under the Paycheck Protection Program solely due to its participation in the

Rhode Island Superior Court's COVID-19 Business Recovery Plan; and (2) enjoining the

Defendants—the United States Small Business Administration and Administrator Isabella Casillas

Guzman—from denying Phoenix House's status as an "eligible recipient" under the Paycheck Protection Program.

As set forth more fully below, absent intervention from this Honorable Court, Phoenix House—which provides critical services in Rhode Island and across New England—will remain unable to access the two million dollars ($2,000,000.00) of second draw Paycheck Protection Program funds that it currently has in hand, while facing a stark and irreparable harm: the inability to continue operating under the supervision of the non-liquidating Special Master and the Rhode Island Superior Court.  Unless and until Phoenix House is declared eligible for loan forgiveness under the Paycheck Protection Program, the Special Master cannot, in the exercise of his business judgment, allow Phoenix House to spend the funds it has received, putting at stake not only Phoenix House's ability to continue operating, but also the Rhode Island Superior Court's COVID-19 Business Recovery Plan, as implemented by the Program Coordinator.

In support thereof, Plaintiffs allege as follows:

## PARTIES

1.      Plaintiff, Jonathan N. Savage, Esq. (the "Special Master") is the Permanent Non-Liquidating Special Master of Phoenix Houses of New England, Inc. ("Phoenix House").

2.      The Rhode Island Superior Court appointed the Special Master first as Temporary Non-Liquating Special Master of Phoenix House on or about January 5, 2021, and, more recently, as Permanent Non-Liquidating Special Master of Phoenix House on or about March 1, 2021. Copies of the appointment orders are attached hereto as **Exhibit 1** (Order Appointing Temporary Non-Liquidating Special Master) and **Exhibit 2** (Order Appointing Permanent Non-Liquidating Special Master and Order Approving Operating Plan).

3.      The Special Master's appointment as a non-liquidating special master with all the

powers of a non-liquidating receiver was made pursuant to the Rhode Island Superior Court's

COVID-19 Business Recovery Plan (Administrative Order No. 2020-04) and the Rhode Island

Superior Court's inherent equitable powers.   A copy of Administrative Order No. 2020-04 is

attached hereto as **Exhibit 3**.[1]

4.      Plaintiff, W. Mark Russo, Esq. (the "Program Coordinator") is the Program

Coordinator of the Rhode Island Superior Court's COVID-19 Business Recovery Plan.  He was

appointed to that position by the Presiding Justice of the Rhode Island Superior Court by order

dated March 31, 2020.  A copy of that order of appointment is attached hereto as **Exhibit 4**.[2]

5.      Phoenix House is a Rhode Island nonprofit corporation, with its principal place of

business located at 99 Wayland Square, Suite 100, Providence, Rhode Island 02906.

6.      Defendant, the United States Small Business Administration (the "SBA") is an

independent federal agency created and authorized pursuant to 15 U.S.C. § 633, *et seq.*  Its

headquarters are located at 409 3rd Street SW, Washington, District of Columbia 02416.  The SBA

maintains a District Office located at 380 Westminster Street, Room 511, Providence, Rhode

Island 02903.

7.      Defendant, Isabella Casillas Guzman (the "Administrator") is the Administrator of

the SBA, a Cabinet-level position, and she is sued solely in her official capacity, pursuant to 15

---

[1]      Administrative      Order      No.      2020-04      is      also      available      at:
https://www.courts.ri.gov/Courts/SuperiorCourt/PDF/20-04COVID-
19BusinessRecoveryPlan.pdf.
[2]      The      order      of      appointment      is      also      available      at:
https://www.courts.ri.gov/Courts/SuperiorCourt/PDF/Order-Covid_19_Business_Recovery_
Plan-Program_Coordinators.pdf.

U.S.C. § 634(b).  The SBA's headquarters are located at 409 3rd Street SW, Washington, District of Columbia 02416.

## JURISDICTION AND VENUE

8.      Jurisdiction is proper in this Court under 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201 and 2202.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b).

## INTRODUCTION

*Phoenix House*

10.     Founded in 1967, Phoenix House is a substance use treatment organization.

11.     With facilities in Rhode Island, Massachusetts, New Hampshire, and Vermont, Phoenix House, Phoenix House operates a broad range of CARF (the Commission on Accreditation of Rehabilitation Facilities) programs, serving approximately 3,500 people throughout New England and more than 800 Rhode Islanders.

12.     Phoenix House's programs incorporate mental health, gender-specific, and trauma-informed services for those members of the community who are in need.  Its residential and outpatient facilities provide safe and affordable substance use and behavioral health treatment, and they are designed to provide positive, empowering, and healthy environments for recovery.

13.     Among other critical services that it provides to the community, Phoenix House accepts individuals from the drug diversion court programs established in Rhode Island.

14.     Over the past year, the COVID-19 pandemic has had a devastating impact on Phoenix House's ability to operate—especially because it houses individuals in a congregate setting.  As a result of necessary social distancing requirements, a decline in individuals' willingness to seek care, staff illness, and quarantine impacts, Phoenix House has experienced a

significant decline in its in-patient and out-patient census.   Combined with its already slim operating margin, the COVID-19 pandemic has decreased revenues and increased fixed costs as well as hose expenses associated with mitigating the effects of the pandemic.

15.     Facing this COVID-19 induced financial crisis, on January 4, 2021, Phoenix House sought and received equitable, non-liquidating protection under the supervision of the Rhode Island Superior Court, resulting in the Special Master's appointment under the Rhode Island Superior Court's equitable powers and the COVID-19 Business Recovery Plan.

*The COVID-19 Business Recovery Plan*

16.     The State of Rhode Island is one of a very limited number of states which recognizes the appointment of a non-liquidating, Court-supervised fiduciary for an operating business entity.

17.     Rhode Island recognizes that such an appointment is an extraordinary remedy that should be reserved for extraordinary situations.

18.     Such a proceeding has its roots in equitable or chancery receiverships that had their genesis in the Chancery Courts of England.  The proceedings were designed to protect properties subject to multiple, potential claims from being dissipated or lost, because injunctive relief on its own had not proven to be effective.

19.     Therefore, in response to the economic disruption caused by the COVID-19 pandemic, the Presiding Justice of the Rhode Island Superior Court, in conjunction with the Rhode Island Superior Court's Business Calendar, created the COVID-19 Business Recovery Plan (the "Business Recovery Plan").

20.     The Business Recovery Plan incorporates the concept of a non-liquidating, Court-supervised fiduciary designed to provide the protections of injunctive relief to an operating entity that has been impacted by the COVID-19 pandemic.

21.     The Business Recovery Plan was implemented to protect and preserve jobs and investment in businesses within the State of Rhode Island, so as to prevent the loss of those assets to the COVID-19 pandemic simply because the operating entity would not otherwise be able to secure the luxury of time to try and deal with the crisis and return to the level of pre-COVID-19 operations.

22.     As its founding document states, in part, "[t]he [Business Recovery Plan] recognizes the Superior Court's inherent equitable authority to supervise entities who, but for the COVID-19 Pandemic, were paying their debts as they became due in the usual course of business. However, the economic disruption caused by the COVID-19 Pandemic has prevented said entities from paying their debts that have become due in the usual course of business.  Thus, assets in which other persons or entities, as creditors, may be interested are in danger of being wasted or lost.  Accordingly, the [Business Recovery Plan] seeks to provide Court supervision and protection, by and through injunctive relief, in the form of a Non-Liquidating Receivership Order to enable those entities to resume and/or continue operations in accord with a Court-approved Operating Plan." *See* **Exhibit 3** (Administrative Order No. 2020-04).

23.     The Business Recovery Plan is neither a bankruptcy, nor a Court-supervised reorganization proceeding.  In turn, the Business Recovery Plan is not a liquidation proceeding.

24.     The purpose of a bankruptcy under the Bankruptcy Code is to marshal assets, preserve value, equitably distribute to creditors and either reorganize, if possible, or orderly liquidate.

25.    Likewise, the purposes are similar in a Federal Equity Receivership and a liquidating receivership under Rhode Island law.  However, that is not the purpose of a non-liquidating proceeding.  A non-liquidating proceeding cannot be analogized to a bankruptcy or a liquidation or a reorganization.

26.    The purpose of a non-liquidating, Court-supervised proceeding under the Business Recovery Plan is not to equitably distribute to creditors and, either reorganize, if possible, or orderly liquidate.  The Rhode Island Superior Court does not have such authority under the Business Recovery Plan.

27.     Rather, the Business Recovery Plan allows for injunctive relief thereby preventing multiple lawsuits from causing the waste or loss of an operating asset and thus, providing the extremely valuable commodity of time, or what the Rhode Island Supreme Court calls a "lifeline," for the operating business to ramp back up to pre-COVID-19 operations, thereby preserving investment and employment opportunities in the State of Rhode Island much the same as the purpose behind the Paycheck Protection Program.

28.    Ultimately, the goal of the Business Recovery Plan is to enter an exit order which allows the operating entity to exit the protections of the Business Recovery Plan with the support of its creditors.  Again, the goal is to provide time, so that the community, the operating entity, and the creditors preserve something more than liquidation value during an unprecedented crisis.

29.     Moreover, such injunctive relief, or protection, is only granted if the supervising Court is satisfied with an "Operating Plan."

30.    As such, the potential risks of utilizing the funds advanced pursuant to the Paycheck Protection Program in a manner at variance with the Paycheck Protection Program is eliminated

by and through supervision of the operating entity by the Rhode Island Superior Court.  In turn, if the use of those funds is appropriate, then the risk of loan repayment is also eliminated.

31.      As contemplated by Administrative Order No. 2020-04, the Order Appointing Permanent Non-Liquidating Special Master, and the Order Approving Operating Plan, Phoenix House continues to operate under a court-approved operating plan (the "Operating Plan").  A copy of the Operating Plan is attached hereto as **Exhibit 5**.

*The Paycheck Protection Program*

32.      In or about March 2020, Congress passed, and the President signed into law, the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act").

33.      Among other things, the CARES Act created the Paycheck Protection Program (the "PPP"), which is administered by the SBA and extends funding to eligible recipients.  *See* 15 U.S.C. § 636(a)(36).

34.      The purpose of the PPP is twofold.  It was designed to ensure that businesses could continue to pay for eligible expenses and continue operating, while protecting the employment and livelihood of their employees.

35.      At its core, the PPP follows a straightforward structure: a borrower applies to a bank or other SBA-authorized lender for a loan, the SBA then issues a one hundred percent guaranty of that loan, and provided that the borrower uses the loan proceeds for permissible purposes, the loan is forgiven.

36.      Since its inception in March 2020, the PPP has received additional rounds of funding from Congress.

*Phoenix House Applies for and Receives a Second Draw PPP Loan*

37.     After entering the Business Recovery Plan, Phoenix House, by and through the Special Master, applied for a second draw PPP loan and received funds in the amount of two million dollars (the "Second Draw PPP Funds").

38.     The Second Draw PPP Funds are currently held in a bank account and have not been used for any purpose.

39.     Phoenix House satisfies all lawful requirements to constitute an "eligible recipient" as defined by the PPP, 15 U.S.C. § 636(36)(A)(iv).

40.     Phoenix House's second draw PPP loan is a "covered loan" as defined by the PPP, 15 U.S.C. § 636(36)(A)(ii).

41.     Phoenix House's Second Draw PPP Funds are eligible for forgiveness under the PPP.

42.     The Special Master has, through his counsel, sought a determination from Defendants that Phoenix House was eligible to receive the Second Draw PPP Funds pursuant to the PPP.

43.     To date, however, and despite the efforts of the Special Master, Defendants have yet to issue such a determination.  Rather, Defendants have, through their agents/employees, indicated that Phoenix House may have been ineligible as an "eligible recipient" and thus ineligible for loan forgiveness due to its participation in the Business Recovery Plan.

*Phoenix House is not a Debtor or Debtor in Possession in a Bankruptcy Proceeding*

44.     The SBA has issued Interim Final Rules with regard to the eligibility of debtors or debtors in possession in a proceeding under the Bankruptcy Code.

45.     Phoenix House is not a debtor or debtor in possession in a proceeding under the Bankruptcy Code.

46.     Rather, Phoenix House enjoys the equitable protections of injunctive relief pursuant to the Business Recovery Plan.

47.     An operating entity who is a party to a legal proceeding in which injunctive relief has been granted to enable that entity to continue operating due to the extraordinary situation brought about by the COVID-19 pandemic has not been defined as ineligible in the PPP legislation, the amendments thereto, or in the Interim Final Rules promulgated by the SBA.

48.     Therefore, to date, there is nothing that deems Phoenix House ineligible for forgiveness under the PPP.

49.     With regard to eligibility of a debtor or debtor in possession in a Bankruptcy proceeding, the Interim Federal Rules promulgated by the SBA, despite the most recent legislation, has purported to deem entities in a Bankruptcy proceeding to be ineligible citing the risk that PPP funds will not be used for appropriate purposes and in turn, the risk of collecting on a PPP loan that is not forgiven.

50.     However, in this instance, the SBA has not deemed an entity in the Business Recovery Plan to be ineligible and pending any such analysis, the SBA can be afforded all of the necessary protections pursuant to the Order entered authorizing the Special Master to utilize the Second Draw PPP Funds.

51.     In this unique case, the Special Master has received authorization from the Rhode Island Superior Court to file this action.  A copy of the Order entered by the Rhode Island Superior Court is attached hereto as **Exhibit 6** and a copy of the Petition for Instructions precipitating that Order is attached hereto as **Exhibit 7**.

52.     The Order specifically provides that the Operating Plan must be amended to set forth the specific purposes for which the Second Draw PPP Funds would be utilized.  Thus, the Superior Court can supervise and determine whether the funds are being used for appropriate and forgivable purposes under the subject legislation.

53.     Moreover, the Order provides that the Special Master is authorized to request that this matter remain open, so that the Special Master can report to this Court and the parties, including the SBA, as to the use of the Second Draw PPP Funds.  Therefore, if there is a dispute as to use and ultimate forgiveness, that issue can be dealt with before the funds are utilized.

54.     This will create a protocol and model wherein PPP funds can be utilized in conjunction with the Business Recovery Plan and in particular, in an effort to enable Phoenix House to resume pre-COVID-19 pandemic operations and preserve a valuable service for the State of Rhode Island and New England.

55.     In accord therewith, there would be a balancing of the equities and a maintenance of the status quo. The status quo being that an entity in the Business Recovery Plan is not currently defined to be ineligible for forgiveness under the PPP and the Court-supervision of the operations of Phoenix House while in the Business Recovery Plan can address any risk identified by the SBA in a Bankruptcy setting.

*The Immediate and Irreparable Harm*

56.     Absent a declaration that Phoenix House was not ineligible to receive the Second Draw PPP Funds, and that such funds are eligible for forgiveness under the PPP, Phoenix House will suffer irreparable harm.

57.     Unless and until Phoenix House is determined to be an "eligible recipient" under the PPP, the Special Master cannot approve or otherwise allow Phoenix House to access and use

the Second Draw PPP Funds.  If Defendants were to later determine that Phoenix House was not

an "eligible recipient" as defined by the PPP, but the Second Draw PPP Funds were nevertheless

spent, it will have created a significant obligation on the part of the special mastership estate, to

the material detriment of Phoenix House's creditors.  In this way, the Special Master's ability to

exercise his business judgment for the protection of the special mastership estate for the benefit of

Phoenix House's creditors is impaired.

58.     Moreover, given the impact of COVID-19 on Phoenix House's finances, it has

become clear to the Special Master that absent access to the Second Draw PPP Funds, Phoenix

House will be unable to comply with the Rhode Island Superior Court-approved Operating Plan,

resulting in subsequent liquidation and the closure of Phoenix House's essential programs.

59.     Once Phoenix House begins to liquidate and its programs are closed, the State of

Rhode Island, as well as its neighboring states, will lose a critical community service provider, and

its patients will lose access to the substance abuse treatment available at Phoenix House's facilities.

60.     In short, the consequences of inaction are dire.

*A Balancing of the Equities Favors Relief*

61.      A balancing of the equities in this matter favors relief, especially in light of the

Orders entered by the Rhode Island Superior Court and this Court's experience in jointly

supervising Rhode Island receivership proceedings.

62.     Phoenix House can continue to operate, and the Business Recovery Plan will

establish a protocol for the use of PPP funds which may well save other businesses.  In turn, the

SBA can actively monitor the situation.

*The Public Interest Weighs Heavily in Favor of Relief*

63.     The public interest identified in the PPP legislation and its amendments are exactly in line with the public interest identified in establishing the Business Recovery Plan—there must be some protections afforded to businesses impacted by the COVID-19 pandemic.  Absent such protection and supervision, Phoenix House and other businesses will fail.  Said failure will forfeit significant investments in the community and the resulting loss of jobs.

64.     Therefore, the public interest weighs heavily in favor of declaratory and injunctive relief, which is designed to allow the PPP and the Business Recovery Plan to function in parallel.

## CAUSES OF ACTION

### COUNT I
### Declaratory Judgment

65.     Plaintiffs incorporate all preceding allegations as though fully set forth herein.

66.     "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."  28 U.S.C. § 2201.

67.     Moreover, courts are empowered to grant "[f]urther necessary or proper relief based on a declaratory judgment or decree . . . against any adverse party whose rights have been determined by such judgment."  28 U.S.C. § 2202.

68.     There is an actual controversy between the Special Master and the Program Coordinator (together, "Plaintiffs"), on one hand, and Defendants, on the other hand, as to whether Phoenix House qualifies as an "eligible recipient" under the PPP.

69.     Therefore, Plaintiffs seeks a declaratory judgment from this Court declaring that

Phoenix House is an "eligible recipient" as defined under 15 U.S.C. § 636(A)(iv).

## COUNT II
### Injunctive Relief

70.     Plaintiffs incorporate all preceding allegations as though fully set forth herein.

71.     Plaintiffs have a likelihood of success on the merits of the claims asserted herein.

72.     Plaintiffs have no adequate remedy at law.

73.     Absent injunctive relief, Plaintiffs and Phoenix House's creditors, employees, and

residents will suffer irreparable harm.

74.     On balance, the minimal hardship to Defendants as compared with the harm

confronted by Plaintiffs, favors the issuance of injunctive relief.

75.     The public interest is best served by the issuance of injunctive relief.

76.     Therefore, Plaintiffs respectfully demands that this Court grant temporary,

preliminary, and permanent injunctive relief:

        a.  Enjoining Defendants, and its agents/employees, from denying Phoenix

           House's status as an "eligible recipient" under the PPP; and

        b.  Any and all other injunctive relief that is fair, equitable, and necessary to

           prevent the irreparable harm alleged herein.

77.     Due to the nature of the requests set forth in this Complaint, no bond is required for

the enforcement of an injunction and, under the circumstances of this case, no bond should be

required for the temporary and preliminary emergency relief sought under Fed. R. Civ. P. 65.

WHEREFORE, Plaintiffs pray for judgment from this Court and against Defendants as set

forth above, as well as for costs, reasonable attorneys' fees, and any and all other relief that this

Court deems just and proper.

## VERIFICATION

I, Jonathan N. Savage, Esq., solely in my capacity as Permanent Non-Liquidating Special

Master of Phoenix Houses of New England, Inc., declare that I have personal knowledge of the

allegations set forth in this Verified Complaint; and that such allegations are true and correct to

the best of my knowledge, information, and belief.

Jonathan N. Savage, Esq. solely in his
capacity as Permanent Non-Liquidating
Special Master of Phoenix Houses of New
England, Inc.

Respectfully Submitted By,
Plaintiff,
Jonathan N. Savage, Esq., solely in his capacity as Permanent Non-Liquidating Special Master of Phoenix Houses of New England, Inc.,
By His Counsel,

/s/ *Christopher J. Fragomeni*
/s/ *Edward D. Pare III*
Christopher J. Fragomeni, Esq. (9476)
Edward D. Pare III, Esq. (9698)
Savage Law Partners, LLP
39 Pike Street
Providence, RI 02903
Tel:    (401) 238-8500
Fax:    (401) 648-6748
chris@savagelawpartners.com
epare@savagelawpartners.com


Plaintiff,
W. Mark Russo, Esq., solely in his capacity as Program Coordinator of the Rhode Island Superior Court COVID-19 Business Recovery Plan,
By His Counsel,


/s/ *W. Mark Russo*
W. Mark Russo, Esq. (#3937)
John A. Dorsey, Esq. (#8373)
Ferrucci Russo, P.C.
55 Pine Street, 3rd Floor
Providence, RI 02903
Tel:    (401) 455-1000
Fax:    (401) 455-7778
mrusso@frlawri.com
jdorsey@frlawri.com


Dated: April 6, 2021