# Exhibit 3

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

# SUPERIOR COURT

## ADMINISTRATIVE ORDER NO. 2020-04

**RE:    COVID-19 Business Recovery Plan**

WHEREAS, on January 30, 2020, the World Health Organization designated the novel Coronavirus, COVID-19, outbreak as a public health emergency of international concern;

WHEREAS, the State of Rhode Island thereafter had documented cases of COVID-19;

WHEREAS, pursuant to Executive Order 20-02, on or about March 9, 2020, the State of Rhode Island declared a state of emergency in response to increasing COVID-19 cases documented within the State of Rhode Island;

WHEREAS, on March 11, 2020, the World Health Organization declared COVID-19 a pandemic (the "COVID-19 Pandemic");

WHEREAS, on or about March 16, 2020, the State of Rhode Island issued Executive Orders that created closures and restrictions impacting an evolving number of businesses and industry sectors;

WHEREAS, on or about March 17, 2020, the Rhode Island Supreme Court issued Executive Order No. 2020-04 entitled "COVID-19 Pandemic Response," providing the Presiding Justice of the Superior Court with authority to promulgate appropriate administrative orders in reaction to the COVID-19 Pandemic;

WHEREAS, the matters subject to this Administrative Order are deemed emergency/essential matters and in addition, the Superior Court has developed procedures so that these matters do not have to be heard in the appropriate judicial building;

WHEREAS, the Rhode Island Superior Court Business Calendar (the "Superior Court" or the "Court"), was established pursuant to prior Administrative Orders issued by the Presiding Justice of the Superior Court as a specialized calendar designed to preserve (a) economic investment in the State of Rhode Island; and (b) jobs in the State of Rhode Island;

WHEREAS, the Administrative Orders issued by the Presiding Justice of the Superior Court established that the Rhode Island Superior Court Business Calendar must address all receivership and insolvency matters;

WHEREAS, the economic impacts created by the COVID-19 Pandemic necessitate the implementation of special procedures to assist in protecting and preserving jobs and investments in businesses within the State of Rhode Island; and

1

WHEREAS, the Superior Court has the inherent authority and discretion to appoint non-liquidating receivers, *see Levine v. Bess Eaton Donut Flour Co.*, 705 A.2d 980 (R.I. 1998).

NOW THEREFORE, it is hereby Ordered as follows:

1. <u>The COVID-19 Non-Liquidating Receivership Program</u>:

   a. The Superior Court by and through the Business Calendar, is hereby authorized to implement the COVID-19 Non-Liquidating Receivership Program ("COVID-19 Receivership Program");

   b. The COVID-19 Receivership Program recognizes the Superior Court's inherent equitable authority to supervise entities who, but for the COVID-19 Pandemic, were paying their debts as they became due in the usual course of business. However, the economic disruption caused by the COVID-19 Pandemic has prevented said entities from paying their debts that have become due in the usual course of business. Thus, assets in which other persons or entities, as creditors, may be interested are in danger of being wasted or lost. Accordingly, the COVID-19 Receivership Program seeks to provide Court supervision and protection, by and through injunctive relief, in the form of a Non-Liquidating Receivership Order to enable those entities to resume and/or continue operations in accord with a Court-approved Operating Plan (defined herein);

   c. The Superior Court shall retain jurisdiction to appoint a liquidating receiver if a Receivership Business (defined herein) is not able to effectively satisfy the operating protocols approved by the Superior Court in accord with an Operating Plan (defined herein);

   d. For businesses that have been petitioned into receivership after January 15, 2020 and are otherwise eligible for the COVID-19 Receivership Program, the Superior Court will consider motions to convert those receiverships into a Non-Liquidating Receivership in accordance with this Order;

   e. Pursuant to Executive Order No. 2020-04 issued by the Rhode Island Supreme Court, the Presiding Justice of the Superior Court may make appropriate exceptions to the types of matters to be conducted during the duration of the COVID-19 Pandemic Response. In accord therewith, the COVID-19 Receivership Program can be implemented, forthwith;

   f. The Presiding Justice of the Superior Court will continue to monitor the State of Rhode Island's COVID-19 Pandemic Response to determine the duration of the COVID-19 Receivership Program.

2.  <u>Eligibility for the COVID-19 Receivership Program</u>:

a.  A business entity, including a sole proprietorship ("Receivership Business") may voluntarily seek to be petitioned into a Non-Liquidating Receivership ("Petitioner") and shall be eligible to be considered for the COVID-19 Receivership Program and the appointment of a Temporary Non-Liquidating Receiver, if the Petitioner can allege the following in a verified petition ("Petition"):

(1) The Receivership Business was not in default of its financial obligations as of January 15, 2020.  A default includes the following:

(a) a noticed and uncured default on the payment of any installment of the principal of, or fees or interest on, any secured obligation of the Receivership Business after the date when the same was due and payable;

(b) a noticed and uncured default, after the expiration of any applicable grace periods, in the due observance or performance of any material covenant, condition or agreement contained in any loan agreement, mortgage deed or other security document relating to any secured debt obligation of the Receivership Business;

(c) a noticed and uncured default, after the expiration of any applicable grace periods, in the payment of any installment of the principal of, or fees or interest on, any other debt of the Receivership Business to any unsecured creditor, after the date when the same was to become due and payable;

(d) a noticed and uncured regulatory violation which substantially impacted the Receivership Business' ability to pay its debts as they became due in the usual course of business;

(e) any final judgment for the payment of money in excess of an aggregate of Ten Thousand Dollars ($10,000) which was rendered on or before January 15, 2020, against the Receivership Business for claims arising prior to January 15, 2020, and the same has remained undischarged for a period of thirty (30) consecutive days post-judgment, during which execution has not been effectively stayed; or

(f) any other reason as determined in accord with the Court's discretion that would indicate that the Receivership Business was not paying its debts as they became due in the usual course of business prior to January 15, 2020.  Conversely, the Court may exercise its discretion

3

and for good cause waive these eligibility requirements as set forth in Sections 2(a)(1)(a)-(e); and

(2) The Receivership Business experienced a reduction in gross revenue of at least twenty (20%) percent during any sixty (60) day operating period beginning January 15, 2020, as compared to a similar operational period prior to January 15, 2020; or

(3) The Receivership Business was forced to cease a substantial portion of its operations due to any governmental or regulatory order at some time after January 15, 2020; or

(4) The Petitioner can certify or otherwise sufficiently demonstrate to the Court's satisfaction, that the COVID-19 Pandemic created an adverse impact on the Receivership Business' operations resulting from either a government and/or regulatory mandated partial or complete closure, or a substantial interruption of cashflow occurring after January 15, 2020, attributable to the COVID-19 Pandemic, which would have been utilized to fund ongoing business operations and, as a result, the Receivership Business cannot continue and/or resume operations and pay its debts as they become due in the usual course of business.

3. <u>Authority of the Non-Liquidating Receiver</u>:

a. The Non-Liquidating Receiver shall be generally authorized and directed as follows:

(1) The publication and notice requirements applicable to a liquidating receiver dually apply to a Non-Liquidating Receivership, hereunder;

(2) Within five (5) days of appointment, the Temporary Non-Liquidating Receiver shall use all good faith efforts to notify any and all claimants and creditors of the Receivership Business by serving a copy of the Petition and the Order appointing a Temporary Non-Liquidating Receiver;

(3) The Temporary Non-Liquidating Receiver shall post a bond as ordered by the Superior Court;

(4) The Order appointing a Temporary Non-Liquidating Receiver will set forth the operating protocols and/or restrictions applicable to the Receivership Business between the time a Temporary Non-Liquidating Receiver is appointed and an Operating Plan is approved by the Superior Court;

(5) Within ten (10) days of appointment of a Temporary Non-Liquidating Receiver, the Receivership Business shall present an Operating Plan to the Temporary Non-Liquidating Receiver.  The Temporary Non-Liquidating Receiver shall then review and revise the Operating Plan as necessary.  Upon completion of the Operating Plan, the Temporary Non-Liquidating Receiver shall then submit the Operating Plan to the Superior Court for approval (the "Recommended Operating Plan");

(6) The Temporary Non-Liquidating Receiver shall serve the Recommended Operating Plan on all known creditors and potential claimants of the Non-Liquidating Receivership by electronic mail—where possible—or first-class mail;

(7) In serving the Recommended Operating Plan on all known creditors and potential claimants of the Non-Liquidating Receivership Estate, the Temporary Non-Liquidating Receiver will establish a ten (10) day comment period for creditors and/or potential claimants to comment on, or object to, the Recommended Operating Plan;

(8) In addition, service of the Recommended Operating Plan on all known creditors and potential claimants shall establish a hearing date for any objections to the Recommended Operating Plan that cannot be resolved by the Temporary Non-Liquidating Receiver.  The date for the hearing shall be set forth in the notice to all known creditors and potential claimants enclosing the Recommended Operating Plan and establishing the ten (10) day comment period for creditors and potential claimants to comment on, or object to, the Recommended Operating Plan.  The hearing date for approval of the Recommended Operating Plan shall be scheduled no later than fifteen (15) days after service of the Recommended Operating Plan on creditors and potential claimants;

(9) Upon approval of the Recommended Operating Plan, the Temporary Non-Liquidating Receiver shall be appointed as the Non-Liquidating Receiver for the duration of the Non-Liquidating Receivership;

(10) Within three (3) business days of the Superior Court's entry of an order approving the Recommended Operating Plan, the Non-Liquidating Receiver shall serve the approved Operating Plan ("Approved Operating Plan") on all known creditors and/or potential claimants of the Non-Liquidating Receivership Estate by electronic mail—where possible—and first class mail;

(11) The Approved Operating Plan shall address the following elements:

    (a)    The operating plan and protocols for the Receivership Business to operate and pay its debts as they become due in the usual course of business during the duration of the Non-Liquidating Receivership;

    (b)    Pre-petition debts; and

    (c)    The Receivership Businesses' operating plan to successfully exit the Non-Liquidating Receivership;

(12)    The Approved Operating Plan shall be updated through reports of the Non-Liquidating Receiver to the Superior Court on thirty (30) day intervals. Reports shall be noticed for hearing with notice to all creditors and claimants in accord with the same procedures applicable to liquidating receivership proceedings;

(13)    The Non-Liquidating Receiver shall be required to secure Court approval after notice to all known creditors and claimants and a hearing thereon, through the amendment of the Approved Operating Plan, for all expenditures and the disposal, sale or encumbrance of any assets outside the normal course of Receivership Business operations established by the Approved Operating Plan;

(14)    In order to conserve on administrative fees and expenses, the Non-Liquidating Receiver shall continue to have the Petitioner operate the Receivership Business on a day-to-day basis.  Notwithstanding, the Petitioner operating a Receivership Business on a day-to-day basis is required to operate in accordance with the Approved Operating Plan and cannot make expenditures and/or dispose of, or encumber, assets of the Non-Liquidating Receivership Estate outside the ordinary course of business as established by the Approved Operating Plan, absent notice to and approval by the Superior Court.  In turn, the Non-Liquidating Receiver shall not have any liability for the administration of the Approved Operating Plan;

(15)    The Receivership Business shall report to the Non-Liquidating Receiver at intervals and in a manner established by the Non-Liquidating Receiver to ensure that the Receivership Business is operating in accord with the Approved Operating Plan;

(16)    The Non-Liquidating Receiver, with notice to the Superior Court, is authorized to take control of day-to-day business operations to the extent necessary to ensure that actions are taken by the Receivership Business are in compliance with the Approved Operating Plan. In the event such action is necessary, the Non-Liquidating Receiver shall immediately petition the Superior Court for further instructions;

(17)   The Non-Liquidating Receiver retains the authority, with notice to the Superior Court, to take control of all operations and assets of the Receivership Business if the Non-Liquidating Receiver determines that action is being taken to remove assets of the Receivership Business from the supervision of the Superior Court.  The Non-Liquidating Receiver shall immediately petition the Superior Court for further instructions.

4.   <u>Court-Ordered Injunction</u>:

a.   In all matters proceeding pursuant to the COVID-19 Receivership Program, the order appointing a Non-Liquidating Receiver shall operate as an injunction until further order of the Superior Court, applicable to all persons and entities, enjoining:

(1) The commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the Receivership Business that was, or could have been, commenced before the commencement of the receivership, or to recover a claim against the Receivership Business that arose before the commencement of the receivership;

(2) The enforcement, against the Receivership Business or against property of the receivership estate, or a judgment obtained before the commencement of the receivership;

(3) Any act to obtain possession of property of, or from, the receivership estate or to exercise control over property of the receivership estate;

(4) Any act to create, perfect, or enforce any lien against property of the receivership estate;

(5) Any act to create, perfect, or enforce against property of the Receivership Business any lien to the extent that the lien secures a claim that arose before the commencement of the receivership;

(6) Any act to collect, assess, or recover a claim against the Receivership Business that arose before the commencement of the receivership; and

(7) The setoff of any debt owing to the Receivership Business that arose before the commencement of the receivership against any claim against the Receivership Business.

b.   Persons and/or entities, including governmental and/or regulatory entities, seeking to pursue any action that is enjoined by the Order appointing the Non-Liquidating Receiver shall be required to move the Superior Court for relief from the injunctive provisions of the Order appointing the Non-Liquidating

Receiver.  The hearing shall be scheduled by the Superior Court within a timeframe that the Superior Court deems appropriate in light of the circumstances underlying the motion for relief from the injunctive provisions of the Order appointing a Non-Liquidating Receiver.

5.  <u>Default Under the Approved Operating Plan</u>:

   a.  Default under the Approved Operating Plan shall be defined as follows:

      (1) The inability and/or refusal of the Receivership Business to pay its debts as they become due in the usual course of its business during the duration of the Non-Liquidating Receivership in accord with the Approved Operating Plan;

      (2) The failure of the Receivership Business to make Approved payments and/or accommodations; or

      (3) Expenditures and/or the disposition, sale or encumbrance of assets outside the normal course of the Receivership Business operations pursuant to the Approved Operating Plan.

   b.  Procedure relative to a default under the Approved Operating Plan:

      (1) Default under the Approved Operating Plan may be noticed by the Non-Liquidating Receiver.  In turn, a creditor or claimant can notify the Non-Liquidating Receiver of a default;

      (2) If the default is not cured within a time period not to exceed five (5) business days, the Non-Liquidating Receiver shall notice a hearing on the alleged default;

      (3) Upon a finding of default, the Non-Liquidating Receiver may be ordered by the Superior Court to take control and secure all operations and assets of the Receivership Business for the benefit of the creditors until further order of the Superior Court.

6.  <u>Transition to a Liquidating Receivership</u>:

   a.  In the event the Receivership Business is found to have been in default of an Approved Operating Plan, as defined in this Order, such default shall not prejudice the Receivership Business from seeking the appointment of a liquidating receiver, as otherwise allowed pursuant to the Superior Court's statutory and/or equitable powers.  However, the Receivership Business in default of an Approved Operating Plan is required to file a petition for the appointment of a liquidating receiver within three (3) business days of the

order being entered with regard to said default. Pending the appointment of a liquidating receiver, the Non-Liquidating Receiver shall be ordered by the Superior Court to take control and secure all operations and assets of a Receivership Business for the benefit of creditors;

b. Furthermore, in the event of a Default, as defined in this Order, upon the Court-approved recommendation of the Non-Liquidating Receiver, or upon a motion filed by a creditor which establishes good cause, the Court retains authority to transition the proceeding into a liquidating receivership upon terms and conditions deemed applicable by the Court.  Pending the appointment of a liquidating receiver, the Non-Liquidating Receiver shall be ordered by the Superior Court to take control and secure all operations and assets of a Receivership Business for the benefit of creditors.

7. <u>Order Concluding the Non-Liquidating Receivership</u>

a. The Superior Court retains authority to enter appropriate orders establishing the terms and conditions for the Receivership Business to exit a Non-Liquidating Receivership.  **The COVID-19 Receivership Program has not been implemented to eliminate debt through Superior Court order**. Notwithstanding, a Receivership Business and/or a creditor/claimant can consent to terms and conditions relating to pre-existing debt that can be incorporated into a Superior Court order providing for the Receivership Businesses' exit from a Non-Liquidating Receivership.

8. <u>Administrative Expenses</u>:

a. The Superior Court retains the authority to approve all administrative costs and expenses.  However, in an effort to assist Receivership Businesses that have been impacted by the COVID-19 Pandemic, the Superior Court will consider the reasonable cost and expenses incurred by the Petitioners in engaging professionals to develop an Operating Plan to be a reimbursable cost paid pursuant to an Operating Plan or an order entered by the Superior Court establishing the terms and conditions for the Receivership Business to exit a Non-Liquidating Receivership;

b. The Superior Court reserves the authority to appoint a Program Coordinator to interface with the members of the bar, accountants, the State of Rhode Island, municipalities, and the Federal government to assist businesses in entering the program, identify and coordinate any funding sources which upon appropriate Court-ordered terms and conditions will loan or advance funds to a Non-Liquidating Receivership Estate, and to assist the Non-Liquidating Receiver and the Receivership Business in formulating a plan to exit a Non-Liquidating Receivership.  The Superior Court reserves its authority to allocate reasonable costs attributable to the Program Coordinator to individual Non-Liquidating

Receivership Estates, or Non-Liquidating Receivership Estates transitioned, hereunder, to liquidating receiverships;

c.  Administrative fees and expenses shall be addressed in the Operating Plan and in the final order allowing the Receivership Business to exit the Non-Liquidating Receivership.

9.  <u>Telephonic or Virtual Proceedings</u>

a.  Until further order of the Court, any and all conferences or other proceedings relative to the COVID-19 Receivership Program will be conducted via video or audio conference using the Rhode Island Supreme Court's Webex conferencing System ("Webex").  The Court shall set down and schedule conferences and/or hearing dates via Webex as necessary to fulfill the COVID-19 Receivership Program;

b.  All pleadings, motions, and other documents will be filed in accordance with Super. R. Civ. P. 1, and/or Executive Order 2020-04.  Any orders issued by the Court shall be entered and made part of the Rhode Island Judiciary's Electronic Filing System;

c.  Petitioner shall provide the Court and all parties notice of the Petition for the appointment of a Temporary Non-Liquidating Receiver.

10. <u>Superior Court Authority to Enter Non-Liquidating Receivership Orders on a Case-by-Case Basis</u>

a.  Nothing in this Order shall prevent the Superior Court from entering an order or orders in a Non-Liquidating Receivership proceeding under the COVID-19 Receivership Program to address specific issues in matters on a case-by-case basis.

**BY ORDER OF:**

 **/s/ Alice Bridget Gibney**
**ALICE BRIDGET GIBNEY**
**PRESIDING JUSTICE**

**DATED: March 31, 2020**

10