## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| JONATHAN N. SAVAGE, ESQ., solely in his capacity as Permanent Non-Liquidating Special Master of Phoenix Houses of New England, Inc., and W. MARK RUSSO, ESQ., solely in his capacity as Program Coordinator of the Rhode Island Superior Court COVID-19 Business Recovery Plan, | ) ) ) ) ) ) ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | C.A. No. 1:21-CV-0153-MSM-PAS |
| UNITED STATES SMALL BUSINESS ADMINISTRATION and ISABELLA CASILLAS GUZMAN, in her capacity as Administrator of the Small Business Administration, | ) ) ) ) ) ) |  |
| Defendants. | ) |  |

## <u>MEMORANDUM AND ORDER</u>

Mary S. McElroy, United States District Judge.

This matter tests the boundaries of the Court's permissible reach into what has become for the plaintiffs an undoubtedly frustrating and seemingly unnecessary affair with a government body designed to assist them. The plaintiffs are Jonathan N. Savage, Esq., the Permanent Non-Liquidating Special Master of Phoenix Houses of New England, Inc., and Mark Russo, Esq., the Program Coordinator of the Rhode Island Superior Court COVID-19 Business Recovery Program (collectively "the plaintiffs"). A question has arisen whether Phoenix House, over which Mr. Savage is

the Special Master, is truly eligible for a loan that it has already received through the Paycheck Protection Program ("PPP"). The plaintiffs have sought an answer to this question from the United States Small Business Administration ("SBA"), which established and continues to oversee the eligibility requirements for the PPP, but the SBA has not specifically answered the plaintiffs' question. The plaintiffs have now turned to this Court for the answer.

Unfortunately for the plaintiffs, it is not that simple. The U.S. Constitution empowers this Court to decide only matters when a party has suffered an "injury in fact." Phoenix House has received its loan and there is nothing before the Court to sufficiently demonstrate a substantial likelihood that the SBA will take any action to withdraw from Phoenix House the benefits of the PPP.

For the following reasons, the Court GRANTS the SBA's Motion to Dismiss (ECF No. 21), though this dismissal is without prejudice. The Court DENIES the plaintiffs' Motion for Summary Judgment (ECF No. 23) as moot.

## I.   BACKGROUND

### A. The SBA and the Paycheck Protection Program

"The Small Business Act of 1953 created the Small Business Administration to 'aid, consul, assist, and protect insofar as is possible the interests of small-business concerns....'" *SBA v. McClellan*, 364 U.S. 446, 447 (1960). The SBA "was given extraordinarily broad powers to accomplish these important objectives, including that of lending money to small businesses whenever they could not get necessary loans on reasonable terms from private lenders." *Id.*

2

The PPP is an extension of this mission.   Created under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") on March 27, 2020, as an emergency measure to combat the economic damage of the COVID-19 pandemic, the PPP is "designed to give loans to eligible businesses and, if the loaned funds are used for specified expenses, to allow those loans to be forgiven." *In re: Gateway Radiology Consultants P.A.*, 983 F.3d 1239, 1247 (11th Cir. 2020).   Congress gave the SBA rulemaking power for the PPP and, because of the exigent circumstances of the pandemic, directed that the SBA issue regulations implementing the PPP within 15 days and without regard to the notice requirements of the Administrative Procedure Act. *Id.* at 1249.

To obtain a PPP loan, a potential borrower must first establish eligibility. Because of the need to "provide relief to America's small businesses expeditiously," the SBA in its First Interim Final Rules for the PPP, streamlined the requirements of its usual small-business support loans, known as "Section 7(a) loans." 85 Fed Reg. at 20,812.   Under these rules for the PPP, implemented on April 2, 2020, the SBA relaxed the loan eligibility requirements by not requiring PPP lenders to perform the detailed creditworthiness test for loan applications as set forth in 13 C.F.R. § 120.150. *Id.*   Lenders would instead "rely on certifications of the borrower" made on the PPP Application Form and be assured that the SBA would hold lenders harmless for any borrower error or misrepresentations. *Id.* at 20,812, 20,816.

Once obtained, a loan under the PPP can be used for certain "allowable" expenses, some of which qualify for loan forgiveness.   15 U.S.C. § 636(a)(36)(F)(i); 15

3

U.S.C. § 636m.  Expenses such as payroll costs, mortgage interest payments, and rent are of the type that qualify for forgiveness.  15 U.S.C. § 636m.  However, "[t]he statutory list of allowable uses of loan funds is longer than the list of uses that qualify for loan forgiveness; all forgivable uses are allowable, but not all allowable uses are forgivable."  *Gateway*, 983 F.3d at 1247.

Obtaining forgiveness is a separate process in which the borrower applies to the PPP lender for forgivable expenses paid or incurred.  The lender has 60 days to determine whether the "borrower is entitled to forgiveness of some or all of the amount applied for under the statute and applicable regulations."  85 Fed Reg. 38,306.  The lender then submits its determination to the SBA and requests payment from the SBA for any amounts for which the borrower is entitled to forgiveness.  85 Fed. Reg. 33,005.  Within 90 days, the SBA makes a final determination of the forgivable PPP expenses and remits such amounts to the lender.  *Id.*

## B. Phoenix House and the Rhode Island Superior Court COVID-19 Business Recovery Plan

Phoenix House is a nonprofit substance abuse treatment organization with facilities throughout New England.  (ECF No. 1 ¶¶ 10-12.)  Suffering financially because of the COVID-19 pandemic, Phoenix House sought and received equitable, non-liquidating protection under the supervision of the Rhode Island Superior Court COVID-19 Business Recovery Plan ("Business Recovery Plan" or "BRP").  *Id.* ¶ 15.

The Rhode Island Superior Court created the Business Recovery Plan, a non-liquidating receivership program, in response to the economic disruption caused by

the COVID-19 pandemic. *Id.* at ¶ 19. Under the Superior Court's Administrative Order establishing it, this program "recognizes the Superior Court's inherent equitable authority to supervise entities who, but for the COVID-19 Pandemic, were paying their debts as they became due in the usual course of business." (ECF No. 1-3 at 3.) The BRP utilizes the appointment of a non-liquidating, court-supervised fiduciary who is tasked with overseeing the management of a business's operations pursuant to a court-approved Operating Plan. (ECF No. 1 ¶¶ 20-28.) It also allows for injunctive relief, in the form of a Non-Liquidating Receivership Order, to prevent multiple lawsuits against the operating entity for pre-BRP debts. *Id.* at ¶ 27. Ultimately, the goal of the BRP is to enter an exit order which allows the operating entity to exit its protections with the support of its creditors. *Id.* at ¶ 28.

Rhode Island is one of a few states that recognize the appointment of a non-liquidating, court-supervised fiduciary. *Id.* at ¶ 16. Such an appointment is an extraordinary remedy reserved for unique circumstances. *Id.* at ¶ 17. The appointment of such a fiduciary has its roots in equitable or chancery receiverships; proceedings designed to protect properties from dissipation or loss. *Id.* at ¶ 18. The BRP—which is founded on those principles—is not a bankruptcy proceeding. *Id.* at ¶ 23. Nor is the BRP a court-supervised liquidation proceeding. *Id.*

Indeed, the BRP's purpose differs from a bankruptcy or liquidation proceeding. Unlike a trustee or court-appointed liquidating fiduciary, a non-liquidating fiduciary appointed under the BRP is not called upon to marshal assets, preserve value, and equitably distribute to creditors. *Id.* at ¶¶ 24-26. Instead, the participation simply

5

allows an operating entity to retain its management and provides time to regain its footing and ramp up to its pre-pandemic operations. *Id.* at ¶ 27.

## C. Relevant Events Preceding this Lawsuit

In February 2021, after entering the BRP, Phoenix House, through its Special Master, applied for a second draw PPP loan. *Id.* ¶ 37; ECF No. 22 ¶ 23. Question #1 of the SBA's second draw application form asked whether the applicant is "presently involved in any bankruptcy." (ECF No. 22 ¶ 26.) Phoenix House answered "No." *Id.* ¶ 27. Phoenix House was not (and is not) involved in bankruptcy—a fact that the SBA does not dispute. *Id.* ¶ 57. The SBA also does not dispute that the BRP is not a bankruptcy proceeding. Moreover, there is nothing in the CARES Act, the PPP, or the SBA's Final Interim Rules for the PPP that states that a participant in a state-court, non-liquidating special mastership either does not qualify for PPP as an eligible entity or is in "bankruptcy."

On March 5, 2021, Counsel to the Special Master spoke by telephone to Mark Hayward, the SBA's Rhode Island District Director. The phone call was made because he had questions about the calculation of gross receipts. During that call, the Counsel also mentioned that Phoenix House was a participant in the BRP. (ECF No. 16 ¶ 4.) According to Counsel to the Special Master, Director Hayward "indicated that he believed that there may be an issue regarding Phoenix House's eligibility based upon its participation in the Business Recovery Plan." *Id.* ¶ 6.

Following the telephone call, Director Hayward sent two emails to Counsel to the Special Master quoting from the SBA's Frequently Asked Questions ("FAQs"),

stating that these FAQs were the information that he was aware of on the issue and that he was "just not sure that receivership is covered as well." (ECF No. 16-1.) These FAQs stated that borrowers in a bankruptcy proceeding are not eligible for participation in the PPP. (ECF No. 16-1.) *Id.*

Counsel to the Special Master responded to these emails on March 8, 2021, setting forth his reasons why Phoenix House was not barred from participating in the PPP solely because of its participation in the non-liquidating special mastership. (ECF No. 16-2.) Specifically, that the FAQs could have included state receivership proceedings but did not and that, in any event, the BRP is a non-liquidation proceeding that, unlike most bankruptcy proceedings, does not affect the creditor priority status of the federal government. *Id.* Counsel to the Special Master also asked if he could obtain an advisory opinion from the SBA about this issue. Director Hayward agreed he would pass on this request. *Id.*; ECF No. 16-3.

On March 17, 2021, Counsel to the Special Master provided Director Hayward with the request for an advisory opinion, which included essentially the same question before this Court: whether Phoenix House was eligible to receive its second draw PPP loan despite its participation in the BRP. (ECF No. 16-4.)

Director Hayward forwarded an email from Mark S. O'Brien, District Counsel for the SBA's Maine, and Rhode Island District Offices to Counsel to the Special Master an April 1, 2021. (ECF No. 16-5.) In that email Mr. O'Brien stated that his area Counsel, Ashley Hou, relayed the question to the Office of General Counsel in the SBA's headquarters and that she received the following response:

> SBA does not provide eligibility determinations for specific applicants or borrowers. The applicant/borrower needs to read the PPP program rules and applicable forms and make the eligibility determination and required certifications when submitting the applicable form. The program rules, as well as FAQs on How to Calculate the Revenue Reduction and Maximum Loan Amount for Second Draw PPP loans can be found on our website . . .
> *Id.*

On April 6, 2021, the SBA updated the PPP FAQs which, at question #67, included additional detail for the meaning of the phrase "presently involved in any bankruptcy" used on the PPP loan application. (ECF No. 17-1 at 30.) This updated answer mentions specific chapters of the federal Bankruptcy Code (i.e., Chapters 7, 11, 12 and 13) but makes no mention of a state non-liquidating special mastership. *Id.*

### D. The Instant Complaint

The plaintiffs filed the instant Complaint seeking "a declaratory judgment from this Court declaring that Phoenix House is an 'eligible recipient' as defined under [15 U.S.C. § 636(a)(36)(A)(iv)]." (ECF No. 1 ¶ 69.) In addition, the plaintiffs sought an order enjoining the SBA from denying Phoenix House's status as an "eligible recipient" under the PPP. *Id.* ¶ 76. The Court denied this request for injunctive relief in a May 25, 2021, order finding that the plaintiffs had not demonstrated the necessary threshold showing of irreparable harm.

On the remaining claim for a declaratory judgment, the SBA has filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for a failure to state a claim upon which relief can be granted. The

plaintiffs have filed a Motion for Summary Judgment on the same claim.  The SBA's Motion consists of several threshold arguments[1] such that if it prevailed on any of them dismissal of the Complaint would be warranted, and consideration of the plaintiffs' motion would be an academic exercise.  The Court therefore first considers the SBA's Motion to Dismiss.

## II.    MOTION TO DISMISS STANDARD

The SBA's Motion to Dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) is to be decided construing "the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs." *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 2016).  However, it is the plaintiffs' burden to establish the existence of federal subject matter jurisdiction. *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996).  When deciding a motion under Rule 12(b)(1), the Court may properly consider materials beyond the pleadings. *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).

## III.    DISCUSSION

### A. Standing

Article III of the United States Constitution "gives federal courts the power to adjudicate only genuine 'Cases' and 'Controversies.'" *California v. Texas*, 141 S. Ct. 2104, 2113 (2021).  "That power includes the requirement that litigants have

---

[1] The SBA contends that the plaintiffs' Complaint should be dismissed under the doctrines of standing, ripeness, sovereign immunity, and/or for failure to assert a cause of action beyond a request for declaratory relief.  (ECF No. 21.)

standing." *Id.* A plaintiff has standing if he or she has (1) suffered an injury in fact that (2) is fairly traceable to the conduct complained of and (3) that is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A decision from this Court in a matter in which a plaintiff fails to satisfy any element of the standing inquiry would result in the impermissible issuance of an advisory opinion—rather than a decision in an actual case or controversy—and therefore transgress Article III. *Carney v. Adams*, 141 S. Ct. 493, 498 (2020).

"The 'law of Art. III standing is built on a single basic idea—the idea of separation of powers.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 (1997)). "Federal courts do not possess a roving commission to publicly opine on every legal question" and "do not exercise general legal oversight of the Legislative and Executive Branches, or of private parties." *Id.*; *see also California*, 141 S. Ct. at 2116 (holding that the issuance of advisory opinions "would threaten to grant unelected judges a general authority to conduct oversight of decisions of the elected branches of Government").

This is true even when, as here, the type of relief requested is a declaratory judgment. "[J]ust like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement." *California*, 141 S. Ct. at 2115. Notably, however, the "divide between a valid declaratory judgment and an invalid advisory opinion can be narrow." *Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 16 (1st Cir. 2014).

10

1. **Injury In Fact**

"An injury sufficient to satisfy Article III must be 'concrete and particularized' and 'actual or imminent', not 'conjectural' or 'hypothetical.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Lujan*, 504 U.S. at 560). "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)).

The first consideration is whether an actual injury has occurred or is presently occurring. Through the PPP's self-certifying process, the Special Master certified that Phoenix House was not in bankruptcy (a fact the SBA does not dispute) and was otherwise an entity eligible to receive a loan. In return, Phoenix House got the money. Eligibility, then, is not a problem currently. The issue is the uncertainty surrounding loan forgiveness created by Director Hayward's ambivalence, which the SBA has not yet clarified. The plaintiffs claim that because they cannot be certain if Phoenix House's loan will be forgiven, the Special Master faces the "Hobson's choice" of permitting Phoenix House to spend the loan funds with the possibility of "an adverse eligibility determination down the road" or face liquidation and closure by not spending the money. (ECF No. 23 at 8.) It is thus conceivably possible that at some later date the SBA could take administrative action that would specifically address whether entities in non-liquidating state receiverships are eligible entities under the PPP and could do so in a way that negatively impacts Phoenix House's ability to achieve loan forgiveness. But that is a possibility in the future, and so the

11

Court must consider whether there is a "threatened injury" that is "certainly impending" or whether there is a "'substantial risk' the harm will occur." *Susan B. Anthony List*, 573 U.S. at 158.

Understanding the "threatened injury" as the possibility Phoenix House's loan is not forgiven because Director Hayward is or was "just not sure" that Phoenix House was eligible for a PPP loan, the Court cannot find that the harm is "certainly impending." There is no statute, rule, or other guidance providing that state non-liquidating special masterships fall under the category of bankruptcy for PPP eligibility purposes. Nor are there any allegations or evidence that the SBA intends to take any action to exclude from loan forgiveness an entity involved in such a state proceeding. *See Clapper*, 568 U.S. at 409.

There being no "certainly impending" harm, the second avenue for the plaintiffs to establish standing is under the "potentially more lenient 'substantial risk'" standard. *See Blum v. Holder*, 744 F.3d 790, 799 (1st Cir. 2014). The question becomes whether the plaintiffs' fears that the threatened injury will occur are too speculative to create standing. *See California*, 141 S. Ct. at 2114 ("In the absence of contemporary enforcement, we have said that a plaintiff claiming standing must show that the likelihood of future enforcement is 'substantial.'"); *Reddy v. Foster*, 845 F.3d 495, 500 (1st Cir. 2017) (holding that there is no standing if a future injury is "too speculative for Article III purposes").

What we have here is the plaintiffs' understandable uncertainty created by the uncertainty of Director Hayward. But the SBA's Final Interim Rules for the PPP at

that time, and the updated (April 6, 2021) elaboration in the FAQs on the phrase "presently involved in any bankruptcy," have not included state non-liquidating receiverships as a form of bankruptcy that would render an entity ineligible under the PPP.  The SBA could have included such a definition, especially when it updated its FAQS after being asked the direct question, but it did not.  There is nothing before the Court to suggest a substantial likelihood that the SBA will take some future action to include what it currently does not include: that entities in state non-liquidating special masterships are "presently involved in any bankruptcy."

It is true that "[w]here threatened action by the *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat."  *Susan B. Anthony List*, 573 U.S. at 158-59 (emphasis in original) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007)). In such cases, the Supreme Court has "permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent." *Id.*  In other words, plaintiffs may establish standing to challenge a statute or governing rule that precludes a certain behavior that the plaintiff has taken or intends to take and when he or she faces a "credible threat of enforcement."  *See Id.* at 159-61 (collecting cases); *see also Mass. Delivery Ass'n*, 769 F.3d at 16-17 (holding that the "peril of an enforcement" of an existing statute was not "remote or speculative" because the plaintiffs had been sued by private parties for violation of the statute); *N.H. Hemp Council, Inc. v. Marshall*, 203 F.3d 1, 5 (1st Cir. 2000) (holding that the plaintiff had standing because a threat of enforcement was "realistic" because of a

13

government agency's expressed interpretation of a federal statute in a way that criminalized their behavior and because of enforcement against other parties).   In this case, however, we have less.   There is no statute or rule deeming entities in a state non-liquidating receivership program ineligible for PPP loans.   Although the SBA's District Director "indicated" that he was not "sure" whether entities in the BRP were ineligible, there are no allegations that it is "sufficiently imminent" that the SBA will take any administrative action making this so.   *See Susan B. Anthony List*, 573 U.S. at 159; *Reddy*, 845 F.3d at 503 ("[A] plaintiff's conjectural fear that a government actor 'might in the future take some *other* and additional action detrimental to' her does not suffice to create standing.") (emphasis in original) (quoting *Clapper*, 568 U.S. at 418).

In all, because the plaintiffs have not sufficiently alleged that a "threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur," they have not established standing.   *See Susan B. Anthony List*, 573 U.S. at 159.   Thus, the Court does not proceed to the SBA's remaining arguments or to the plaintiffs' Motion for Summary Judgment.   *See California*, 141 S. Ct. at 2113 ("We proceed no further than standing.").

## IV.   CONCLUSION

Despite its mission to "aid, consul, and assist" small businesses, the SBA has caused uncertainty to the plaintiffs by holding fast on a policy of refusing to answer specific inquiries regarding PPP eligibility.   Nevertheless, the plaintiffs have not demonstrated that a threatened injury is "certainly impending" or that there is a

14

"substantial risk" that harm will occur.  Without that, the plaintiffs have not made the requisite showing of an injury in fact.  The plaintiffs thus lack standing to proceed, and the matter must be dismissed for want of jurisdiction.

The SBA's Motion to Dismiss (ECF No. 21) is therefore GRANTED.  This dismissal, however, is without prejudice.  *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 736 (1st Cir. 2016) ("a dismissal for lack of Article III standing must operate without prejudice").

The plaintiffs' Motion for Summary Judgment (ECF No. 23) is DENIED as moot.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
August 4, 2021